UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| TYLER N.,<br><br>        Plaintiff,<br><br>v.<br><br>LELAND DUDEK, Acting Commissioner of the Social Security Administration,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:24-cv-00014<br><br>Magistrate Judge Daphne A. Oberg |

Tyler N.[1] brought this action for judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration.[2] The administrative law judge ("ALJ") who addressed Mr. N.'s application determined he did not qualify as disabled.[3]  Mr. N. argues the ALJ erred in his evaluation of Mr. N.'s post-traumatic stress disorder and the medical opinion evidence.[4]  Mr. N. also contends the ALJ erred by using terms in the residual functional capacity assessment which are not clearly defined or explained.[5]  Because the ALJ applied the correct legal standards,

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in judicial opinions in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. ("Tr.") 17–29, Doc. No. 7.)

[4] (*See* Opening Br. 2, 6–7, Doc. No. 8.)

[5] (*See id.* at 2, 7.)

and substantial evidence supports his findings, the Commissioner's decision is affirmed.[6]

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[7] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[8]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[9] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[10] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 6.)

[7] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[8] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[9] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[10] *Id.* at 103 (citation omitted).

[11] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[12]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[13]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[14] An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[15]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[16]

---

[12] *Lax*, 489 F.3d at 1084 (citation omitted).

[13] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[14] 42 U.S.C. § 423(d)(1)(A).

[15] *Id.* § 423(d)(2)(A).

[16] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

In the first four steps, the claimant has the burden of establishing disability.[17]  And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[18]

## PROCEDURAL HISTORY

Mr. N. applied for disability insurance benefits under Title II of the Social Security Act,[19] alleging he became disabled on January 1, 2021.[20]  After an administrative hearing,[21] the ALJ issued a decision denying benefits.[22]

At step two of the sequential evaluation, the ALJ found Mr. N. had the severe impairments of degenerative disc disease of the lumbar, thoracic, and cervical spine; post-traumatic stress disorder ("PTSD"); depression; and anxiety.[23]  He found Mr. N. also had nonsevere impairments including obesity, obstructive sleep apnea, migraine headaches, and complex regional pain syndrome.[24]  At step three, the ALJ found Mr. N.'s impairments did not meet or medically equal an impairment listing.[25]

---

[17] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[18] *Id.*

[19] 42 U.S.C. §§ 401–434.

[20] (*See* Tr. 17.)

[21] (*See* Tr. 34–69.)

[22] (Tr. 17–29.)

[23] (Tr. 19.)

[24] (Tr. 20.)

[25] (Tr. 20–22.)

The ALJ then found Mr. N. had the residual functional capacity ("RFC") to

perform "medium work" with the following restrictions:

> [H]e can frequently climb, he can frequently stoop, kneel, crouch and crawl;
> he is limited occasional exposure to noise above level 4; he is limited to
> no work in confined spaces; he is limited to no commercial driving on public
> roads; he is limited to jobs that only require up to detailed but uninvolved
> tasks with few concrete variables, little in the way of changes in job
> processes from day to day, and jobs with multistep tasks, easily resumed
> after momentary distraction; and he is limited to jobs that do not require any
> work-related interaction with the public and no more than occasional
> work-related interaction with co-workers and supervisors.[26]

At step four, based on this RFC finding and the testimony of a vocational expert, the

ALJ found Mr. N. could perform past work as a lubrication servicer.[27]  Alternatively, at

step five, the ALJ found Mr. N. capable of other jobs in the national economy.[28]

Accordingly, the ALJ found Mr. N. not disabled and denied his claim.[29]  This decision

became final when the Appeals Council denied Mr. N.'s request for review.[30]

## ANALYSIS

Mr. N. raises three general contentions of error.  First, he argues the ALJ failed to

properly evaluate the "severity" of his PTSD—particularly by finding he was only mildly

limited in his ability to understand, remember, and apply information.[31]  Second, he

argues the ALJ failed to properly evaluate medical opinion evidence from his treating

---

[26] (Tr. 22.)

[27] (Tr. 27–29.)

[28] (Tr. 28–29.)

[29] (Tr. 29.)

[30] (Tr. 1–3.)

[31] (Opening Br. 2, 6–11, Doc. No. 8.)

therapist, Candace Monzon, and the Department of Veterans Affairs.[32]  Third, he

argues the ALJ erred by including terms in the RFC assessment which were not clearly

defined or explained.[33]  Each issue is addressed in turn.

A.  Evaluation of PTSD

Mr. N. argues the ALJ failed to properly evaluate the "severity" of his PTSD.[34]

He contends the ALJ erred in assessing his limitations in the areas of mental functioning

used at steps two and three of the sequential evaluation—particularly by finding he was

only mildly limited in his ability to understand, remember, and apply information.[35]  Mr.

N. argues the ALJ's erroneous assessment at these steps resulted in a "a failure to

properly evaluate his residual functional capacity."[36]  As explained below, Mr. N. fails to

demonstrate any error in the ALJ's assessment of his PTSD.

*1.  Legal Standards*

The four areas of mental functioning (known as the "paragraph B" criteria) are

(1) understanding, remembering, or applying information; (2) interacting with others; (3)

concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[37]

These criteria are "not an RFC assessment but are used to rate the severity of mental

---

[32] (*Id.* at 7, 11, 13–16.)

[33] (*Id.* at 2, 7, 16–19.)

[34] (*Id.* at 2, 7.)

[35] (*Id.* at 6–11.)

[36] (Pl.'s Reply Br. 2, Doc. No. 14.)

[37] *See* 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00E.

impairment(s) at steps 2 and 3 of the sequential evaluation process."[38]  The ALJ must rate the claimant's degree of limitation in each area on a five-point scale: none, mild, moderate, marked, or extreme.[39]  At step two, a mental impairment is not severe if it results in no more than mild limitations in these areas.[40]  At step three, to meet the requirements of "paragraph B" of the mental disorder listings, the claimant must have "extreme limitation of one, or marked limitation of two, paragraph B areas."[41]

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings."[42]  In other words, a finding of limitation under the paragraph B criteria "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."[43]

### 2.  ALJ Findings

At steps two and three of the sequential evaluation, the ALJ found Mr. N.'s PTSD, depression, and anxiety were severe impairments that did not meet or medically equal a listed impairment.[44]  In making these findings, the ALJ assessed Mr. N.'s

---

[38] SSR 96-8p, 1996 SSR LEXIS 5, at *13 (July 2, 1996).

[39] *See* 20 C.F.R. § 404.1520a(c)(4); 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

[40] *See* 20 C.F.R. § 404.1520a(d)(1).

[41] 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00F2.

[42] SSR 96-8p, 1996 SSR LEXIS 5, at *13.

[43] *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished).

[44] (Tr. 19–22.)

limitations under the paragraph B criteria as required.  The ALJ found Mr. N. had only mild limitations in understanding, remembering, or applying information, and moderate limitations in the other three areas of mental functioning.[45]  The ALJ acknowledged the "paragraph B" criteria were not an RFC assessment, but he noted that assessment reflected the degree of limitation found in the paragraph B analysis.[46]

In the portion of the decision addressing RFC, the ALJ discussed the evidence related to Mr. N.'s mental impairments, symptoms, and treatment history in detail.[47] The ALJ concluded Mr. N. "achieve[d] relatively good symptom control with conservative treatment, his symptoms [were] mostly mild and manageable, his mental status examinations [were] within normal limits, and he [was] active and independent in his activities of daily living."[48]  The ALJ included some restrictions in the RFC to account for ongoing symptoms from PTSD, anxiety, and depression, including limiting Mr. N.'s noise exposure; restricting him from working in confined spaces or commercial driving on public roads; limiting him to "detailed but uninvolved tasks with few concrete variables, little in the way of changes in job processes from day to day, and jobs with multistep tasks, easily resumed after momentary distraction"; and restricting his

---

[45] (Tr. 21–22.)

[46] (Tr. 22.)

[47] (*See* Tr. 25–26.)

[48] (Tr. 25.)

interactions with the public, co-workers, and supervisors.[49]  But the ALJ found the evidence did not support greater limitations.[50]

### 3. Analysis

Mr. N. argues the ALJ erred in finding he had only a mild limitation in understanding, remembering, or applying information (the first "paragraph B" area of mental functioning).[51]  Specifically, he argues the ALJ failed to acknowledge evidence of Mr. N.'s memory loss, and improperly relied on mental status examinations where no testing or in-depth evaluation was performed.[52]

As noted above, the paragraph B criteria are used at steps two and three of the sequential evaluation.[53]  Notably, Mr. N. does not challenge the Commissioner's ultimate findings at steps two and three (that Mr. N.'s PTSD, depression, and anxiety were severe impairments which did not meet a listing).  In these circumstances, the relevance of the ALJ's paragraph B findings is limited—particularly where the ALJ proceeded through the remaining steps, analyzed the effects of Mr. N.'s mental impairments on his RFC, and included related limitations in the RFC.[54]  Nevertheless, where the ALJ indicated his RFC findings reflected the degree of limitation found in the

---

[49] (Tr. 25–26.)

[50] (Tr. 26.)

[51] (*See* Opening Br. 9–11, Doc. No. 8.)

[52] (*See id.*)

[53] SSR 96-8p, 1996 SSR LEXIS 5, at *13.

[54] (*See* Tr. 22–27.)

paragraph B analysis,[55] Mr. N.'s arguments regarding the paragraph B findings are addressed.

Mr. N. has demonstrated no error in the ALJ's finding of mild limitation in understanding, remembering, or applying information.  Contrary to Mr. N.'s argument, the ALJ specifically acknowledged Mr. N. "complained of memory issues in treatment notes, and he testified at the hearing that he stopped working around the alleged onset date due to memory issues related to his [traumatic brain injury]."[56]  But the ALJ observed Mr. N. was "consistently noted in mental status examinations in treatment and counseling notes to have intact memory."[57]  Based on this evidence, the ALJ concluded Mr. N. had only mild limitations in this area.[58]  The records cited by the ALJ include numerous examinations throughout the relevant period, and most were from mental health providers treating Mr. N.'s PTSD.[59]  These records are adequate to support the ALJ's finding that Mr. N.'s memory was only mildly limited.  Accordingly, substantial evidence supports the ALJ's finding.

---

[55] (Tr. 22.)

[56] (Tr. 21.)

[57] (*Id.* (citing Tr. 542, 554, 559, 566, 591, 604, 703, 761, 787–88, 812–13, 819–20, 826, 933, 959).)  The ALJ also included a citation to Exhibit B4F, (Tr. 612–61).  Exhibit B4F contains treatment records from therapist Candace Monzon documenting Mr. N.'s reported memory problems, (*see, e.g.*, Tr. 624, 649–50, 654), and one mental status examination indicating Mr. N.'s memory was "impaired," (Tr. 617).  Thus, the ALJ appears to have cited Ms. Monzon's records in support of the prior sentence in the decision acknowledging Mr. N.'s reports of memory issues.

[58] (Tr. 21.)

[59] (*See* Tr. 542, 554, 559, 591, 604, 761, 787–88, 812–13, 819–20, 933 (records from mental health providers).)

Citing a letter and treatment records from his therapist, Candace Monzon, Mr. N.

contends "more thorough examinations and discussions with his mental health provider"

show his memory was "impaired"—and document his reports of memory loss and his

inability to work due to memory issues.[60]  As an initial matter, the ALJ cited Ms.

Monzon's records in addressing Mr. N.'s memory limitations; he did not "ignore" them.[61]

Further, Ms. Monzon's records reflect only one mental status examination (from an

intake appointment) indicating Mr. N.'s memory was "impaired."[62]  There is no evidence

Ms. Monzon's examination during this appointment was "more thorough" than those of

other mental health providers—Mr. N. provides no support for this assertion.  And

although he complains the other mental status examinations the ALJ cited were not

based on testing, Mr. N. points to no evidence that Ms. Monzon conducted memory

testing, either.  Although Ms. Monzon's records might support a finding of greater

limitations, the ALJ did not err in concluding Mr. N. was only mildly limited based on

numerous mental status examinations from other providers (including mental health

providers) noting "intact" memory.  Because substantial evidence supports the ALJ's

conclusion, the court will not reweigh this evidence.

Mr. N. also argues the ALJ ignored his testimony that his medications contributed

to his memory issues, that he had to stop working due to problems with memory and

---

[60] (Opening Br. 10–11, Doc. No. 8 (citing Tr. 445–46, 616–18, 627, 649–50, 658).)

[61] (See Tr. 21 (citing Exhibit BF4 (Tr. 612–661)); see also Opening Br. 10–11, Doc. No. 8 (claiming the ALJ ignored or failed to acknowledge these records).)  The ALJ also considered Ms. Monzon's letter in evaluating Mr. N.'s RFC, treating it as medical opinion evidence (as discussed in further detail below).  (See Tr. 26–27.)

[62] (Tr. 617.)

anger outbursts, and his report (on a "function report" form) that his wife had to remind him to take medications and attend appointments.[63]   But the record demonstrates the ALJ considered all this evidence.  As noted above, the ALJ specifically acknowledged Mr. N.'s testimony that he stopped working due to memory issues (in the portion of the decision addressing memory limitations under the paragraph B criteria).[64]   And in the portion of the decision addressing RFC, the ALJ acknowledged Mr. N.'s testimony that his medication caused side effects including memory issues (but noted he regularly denied experiencing side effects in treatment notes).[65]   The ALJ also cited Mr. N.'s function report,[66] demonstrating he considered it; the ALJ was not required to discuss every portion of the report.[67]   The record demonstrates the ALJ adequately considered all this evidence in addressing Mr. N.'s memory-related limitations.

In sum, Mr. N. has demonstrated no error in the ALJ's evaluation of his PTSD and related memory limitations under the paragraph B criteria.

B.  Medical Opinions and VA Disability Rating

Mr. N. next contends the ALJ failed to properly evaluate medical opinion evidence from (1) his therapist, Candace Monzon, LCSW, and (2) the Department of

---

[63] (Opening Br. 10, Doc. No. 8 (citing Tr. 43–45 (hearing testimony), 374–75 (function report).)

[64] (Tr. 21 (noting Mr. N. "testified at the hearing that he stopped working around the alleged onset date due to memory issues").)

[65] (Tr. 23, 25.)

[66] (Tr. 21–23 (citing Exhibit B5E (Tr. 373–80).)

[67] See Clifton v. Chater, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Veterans Affairs ("VA") regarding his VA disability rating.[68]  As explained below, the ALJ properly evaluated Ms. Monzon's opinions under the standards applicable to medical opinions.  Further, Mr. N.'s VA disability rating records do not contain medical opinions, and the ALJ was not required to articulate how he considered those records.

    1.  *Ms. Monzon's Opinions*

Agency regulations define "medical opinion" narrowly as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated work-related abilities.[69]  In determining a claimant's RFC, an ALJ must assess the persuasiveness of medical opinion evidence based on the following factors: (1) supportability (the objective medical evidence and supporting explanations presented by the medical source); (2) the consistency of the opinion with other medical and nonmedical sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[70]  The most important factors are supportability and consistency—the ALJ is required to explain how he evaluated those two factors.[71]

Ms. Monzon provided a letter describing Mr. N.'s "service-connected disabilities"—including migraines and PTSD—and opining that Mr. N. "experiences

---

[68] (*See* Opening Br. 11–16, Doc. No. 8.)

[69] 20 C.F.R. § 404.1513(a)(2).

[70] *Id.* § 404.1520c(b), (c)(1)–(5).

[71] *Id.* § 404.1520c(b)(2).

extreme difficulty remember[ing] appointments or daily tasks" and "has extreme difficulty adapting when the unexpected occurs."[72]  While first noting Ms. Monzon was "not an acceptable medical source," the ALJ evaluated these two statements as medical opinions and found them unpersuasive.[73]  The ALJ explained that Ms. Monzon "provid[ed] no references to any medical records in support of these opinions and fail[ed] to give any basis for these opinions."[74]  The ALJ then found "the notion of the claimant having 'extreme difficulty' (a term that Ms. Monzon does not define) in these areas is inconsistent with his presentation on mental status examinations, where he is regularly noted to be fully oriented, to have intact memory, a pleasant mood, normal thought content, adequate concentration, and fair to good insight and judgment."[75]

This record shows the ALJ properly evaluated Ms. Monzon's medical opinions under the applicable legal framework.  Mr. N. first argues the ALJ improperly discounted Ms. Monzon's opinions because she was "not an acceptable medical source," contrary to agency policy.[76]  In making this argument, Mr. N. cites outdated regulations inapplicable to claims filed on or after March 27, 2017 (like this claim).[77]  The current, applicable regulations require ALJs to evaluate the persuasiveness of medical opinions

---

[72] (Tr. 445–46.)

[73] (Tr. 26–27.); *see also* 20 C.F.R. § 404.1502(a) (providing a definition of "acceptable medical source" which does not include LCSWs).

[74] (Tr. 26–27.)

[75] (Tr. 27.)

[76] (*See* Opening Br. 13, Doc. No. 8.)

[77] (*See id.* (citing 20 C.F.R. § 404.1527(f)).)

from all medical sources (not just "acceptable medical sources") under the framework set forth above.[78]  Thus, "assigning no persuasive value on this basis alone would be inappropriate."[79]  But the ALJ did not reject Ms. Monzon's opinions solely because she was not an acceptable medical source.  Instead, the ALJ evaluated the persuasiveness of her opinions under the standards applicable to medical opinions, including explaining how he considered the supportability and consistency factors as required.[80]  In these circumstances, the ALJ's description of Ms. Monzon as "not an acceptable medical source" is not fatal to his analysis.[81]

Substantial evidence supports the ALJ's findings that Ms. Monzon's opinions were unsupported and inconsistent with other evidence.  As to supportability, the ALJ stated Ms. Monzon provided "no references to any medical records in support of these opinions and fail[ed] to give any basis for these opinions."[82]  As Mr. N. points out, the second part of this statement is not entirely accurate.  Ms. Monzon did give some bases

---

[78] *See* 20 C.F.R. § 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844 (Jan. 18, 2017).  Ms. Monzon qualifies as a "medical source" under agency regulations.  *See* 20 C.F.R. § 404.1502(d).

[79] *White v. Kijakazi*, No. 4:20-cv-00119, 2021 U.S. Dist. LEXIS 240839, at *11 (D. Utah Dec. 15, 2021) (unpublished) (citing 82 FR 5844).

[80] (*See* Tr. 26–27.)

[81] *See Connor G. v. O'Malley*, No. 4:23-cv-00075, 2024 U.S. Dist. LEXIS 67560, at *19–20 (D. Utah Apr. 12, 2024) (unpublished) (finding no error where an ALJ stated an LCSW was not an acceptable medical source but went on to evaluate his opinions under the applicable legal framework); *White*, 2021 U.S. Dist. LEXIS 240839, at *11–12 (finding no error where an ALJ noted a provider was not an acceptable medical source but articulated other reasons for finding her opinions unpersuasive which were supported by substantial evidence).

[82] (Tr. 26–27.)

for her opinions: she described Mr. N.'s military-service-related injuries and diagnoses, his reported symptoms, and his treatment history with her.[83]  And in opining Mr. N. had "extreme difficulty remembering appointments and daily tasks," Ms. Monzon explained he "often forgot appointments and required a recurring day and time."[84]  Nevertheless, the first half of the ALJ's statement—that Ms. Monzon provided no references to supporting medical records—is accurate.  Thus, the ALJ provided at least one valid reason for finding Ms. Monzon's opinion unsupported.  Further, substantial evidence supports the ALJ's conclusion that Ms. Monzon's opinions were inconsistent with other evidence, including the numerous mental status examinations from other providers cited by the ALJ.[85]  Where the ALJ applied the correct legal standards and gave some valid reasons for his supportability and consistency findings, he did not err in finding Ms. Monzon's opinions unpersuasive.

### 2.  VA Disability Rating

Mr. N. next contends the ALJ erred in "dismiss[ing]" records related to his VA disability rating, arguing these records should have been evaluated as medical opinion evidence.[86]  Mr. N. claims the ALJ "chastised" his counsel at the hearing for not

---

[83] (Tr. 445–46.)

[84] (Tr. 445.)

[85] (*See* Tr. 27, 542, 554, 559, 566, 591, 604, 703, 761, 787–88, 812–13, 819–20, 826, 933, 959.)

[86] (Opening Br. 14–16, Doc. No. 8.)

providing the records and left the record open so they could be submitted, but then improperly treated them as irrelevant without further evaluation.[87]

Agency regulations provide that "[d]ecisions by other governmental agencies" are "neither valuable nor persuasive" to the issue of whether a claimant is disabled under the Social Security Act.[88]  Accordingly, the ALJ "will not provide any analysis about how [he] considered such evidence in [his] determination or decision, even under § 404.1520c" (the regulation governing evaluation of medical opinions).[89]  However, the ALJ "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision," including medical opinions.[90]  As noted above, agency regulations define "medical opinion" narrowly as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated work-related abilities.[91]

Here, the ALJ noted the VA had assigned Mr. N. a "service-connected disability rating of 100%," citing the VA records submitted after the hearing.[92]  But he found the VA's disability determination unpersuasive, noting the processes used by the VA and the Social Security Administration differed "fundamentally" because the VA did not

---

[87] (*Id.* at 14–15.)

[88] 20 C.F.R. § 404.1520b(c)(1).

[89] *Id.* § 404.1520b(c).

[90] *Id.* § 404.1504.

[91] *Id.* § 404.1513(a)(2).

[92] (Tr. 27 (citing Tr. 967–89).)

"make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy."[93]  Because of this, the ALJ found the VA disability rating had "little probative value."[94]

The ALJ treated the VA disability rating records consistently with agency regulations.  Contrary to Mr. N.'s argument, the ALJ was not required to evaluate the disability rating itself as medical opinion evidence.[95]  Mr. N. cites various district court decisions finding that where VA records contain medical opinions (as defined in social security regulations), the ALJ must evaluate the persuasiveness of the opinions under the applicable framework.[96]  But Mr. N. does not identify any medical opinions in the VA records at issue here.[97]  Accordingly, the ALJ was not required to assign persuasive

---

[93] (*Id.*)

[94] (*Id.*)

[95] *See* 20 C.F.R. § 404.1520b(c).

[96] (*See* Opening Br. 15 n.1, Doc. No. 8); *James W. v. Comm'r*, No. 3:20-cv-116, 2022 U.S. Dist. LEXIS 210702, at *29–30 (N.D. Ga. Mar. 29, 2022) (unpublished); *Ealey v. Comm'r*, No. 3:20-cv-124, 2021 U.S. Dist. LEXIS 103102, at *11–12 (S.D. Miss. May 7, 2021), R. & R. adopted, 2021 U.S. Dist. LEXIS 102446 (S.D. Miss. June 1, 2021); *Johnathan W. v. Saul*, No. 6:19-cv-1242, 2021 U.S. Dist. LEXIS 57537, at *24–26 (N.D.N.Y. Mar. 26, 2021) (unpublished); *Charles F. v. Comm'r*, No. 19-cv-1664, 2021 U.S. Dist. LEXIS 47754, at *6–7 (W.D.N.Y. Mar. 15, 2021) (unpublished); *Joseph M. v. Comm'r*, No. 1:19-cv-1052, 2021 U.S. Dist. LEXIS 41689, at *40–41 (W.D.N.Y. Mar. 5, 2021) (unpublished); *Christopher M.V. v. Comm'r*, No. 1:19-cv-1500, 2021 U.S. Dist. LEXIS 40130, at *11–12 (W.D.N.Y. Mar. 3, 2021) (unpublished).

[97] *See* 20 C.F.R. § 404.1513(a)(2).

value to the VA's disability findings or discuss how he considered these records.[98]  The fact that the ALJ asked Mr. N. to submit these records does not change the legal standards governing the ALJ's consideration of them.  Mr. N. has shown no error in the ALJ's treatment of the VA disability rating records.

C.  Articulation of Residential Functional Capacity

Mr. N. next argues the ALJ erred by using poorly defined, unexplained terms in the RFC assessment.[99]  Specifically, Mr. N. challenges the following portion of the RFC: "he is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of changes in job processes from day to day, and jobs with multistep tasks, easily resumed after momentary distraction."[100]  Mr. N. argues this contains inadequately explained phrases which are not recognizable from agency rules or the Dictionary of Occupational Titles.[101]  For example, Mr. N. contends "little in the way of changes in job processes from day to day" is ambiguous because it could refer to job procedures or to performing the same tasks every day.[102]  He argues "momentary distraction" is similarly unclear because it could mean a few seconds or a few minutes.[103]  Mr. N. contends the ALJ's failure to use clearly defined terms deprives

---

[98] *See id.* § 404.1520b(c).

[99] (Opening Br. 2, 7, 16–19, Doc. No. 8.)

[100] (Tr. 22; *see also* Opening Br. 17, Doc. No. 8.)

[101] (Opening Br. 17–18, Doc. No. 8.)

[102] (*Id.* at 17.)

[103] (*Id.*)

the court of the ability to meaningfully review the decision.[104]  Mr. N. also argues it is unclear whether the vocational expert shared the ALJ's understanding of the terms when the expert opined about Mr. N.'s ability to perform various jobs.[105]

The Commissioner, on the other hand, contends agency regulations contain no requirement to define specific terms in the RFC assessment.[106]  The Commissioner also notes that the vocational expert and the ALJ extensively discussed the meaning of other terms in the hypotheticals posed by ALJ at the hearing, but the expert did not express any reservations or ask for clarification of the terms Mr. N. now challenges.[107] The Commissioner suggests this undermines Mr. N.'s argument.[108]

Mr. N. has not demonstrated reversible error in the ALJ's articulation of his RFC. In support of his argument, Mr. N. relies primarily on a Fourth Circuit case, *Thomas v. Berryhill*,[109] and two district court cases: *Jamie W. v. O'Malley*[110] and *Tennis v. Barnhart*.[111]  None of these cases are binding and each is distinguishable.

In *Thomas*, the claimant argued an ALJ's RFC assessment restricting her to work that did not require a "production rate" or "demand pace" was inconsistent with her

---

[104] (*Id.*)

[105] (*Id.* at 18.)

[106] (Comm'r's Br. 15, Doc. No. 12.)

[107] (*Id.* at 15–16.)

[108] (*Id.* at 16.)

[109] 916 F.3d 307 (4th Cir. 2019).

[110] No. 2:22-cv-804, 2024 U.S. Dist. LEXIS 57511 (D. Utah Mar. 28, 2024) (unpublished).

[111]  No. 04-0229, 2005 U.S. Dist. LEXIS 61647 (D.N.M. Feb. 3, 2005) (unpublished).

moderate limitations in concentration, persistence, and pace.[112]  The Fourth Circuit found the ALJ made a number of errors in the RFC analysis, leaving the court unable "to conduct meaningful appellate review."[113]  After detailing problems with the ALJ's adherence to agency regulations, the sufficiency of her explanations, and the order of her analysis, the court pointed to her use of uncommon terms.[114]  Finding the terms ("production rate" and "demand pace") "not common enough" for the court to ascertain "what they mean without elaboration," the Fourth Circuit concluded it was "difficult, if not impossible," to assess "whether their inclusion in [the] RFC [was] supported by substantial evidence."[115]

In *Jamie W.*, the ALJ found state agency consultants' medical opinions (indicating that the claimant was limited to working in a "low stress environment") persuasive.[116]  But the ALJ's RFC assessment did not explicitly include a "low stress environment" limitation; instead, the ALJ restricted the claimant to work without "fixed high production quotas."[117]  The reviewing district court held the ALJ's "failure to explain the inconsistency between the RFC determination and the low stress environment limitation by the state agency consultants" required remand.[118]  The court also noted the

---

[112] 916 F.3d at 312 n.5.

[113] *Id.* at 312–13.

[114] *Id.*

[115] *Id.* at 312.

[116] 2024 U.S. Dist. LEXIS 57511, at *6–7.

[117] *Id.* at *7.

[118] *Id.* at *8.

ALJ did not define what "high" production quotas meant when posing questions to the vocational expert—and concluded "[t]his undefined term [made] it difficult to determine if the jobs provided are in line with the medical expert's opinion."[119]  Because the court was "unable to discern" what the ALJ meant by "high" productivity, the court could not "determine if the ALJ's RFC determination [was] consistent with the medical opinions or with the jobs provided by the [vocational expert]."[120]

In *Tennis*, the ALJ relied on a medical evaluation establishing the claimant had "pain with hyper-extension, and at 75 degrees of flexion of his spine."[121]  Based on this limitation, the ALJ restricted the claimant to "'occasional postural movements' or 'posturals.'"[122]  The reviewing district court observed it was "at a loss to know what these terms mean, particularly in view of the fact that the ALJ determined that [the] RFC did not include a sit/stand option."[123]  The court concluded "[u]se of such loose, undefined terminology prevents this court from assessing whether the ALJ's RFC determination, and the hypothetical question utilizing that term, accurately reflect all of the impairments borne out by the evidentiary record."[124]

As an initial matter, the RFC terms Mr. N. challenges here are not the same as those at issue in *Thomas*, *Jamie W.*, or *Tennis*.  More critically, unlike those cases, Mr.

---

[119] *Id.* at *9.

[120] *Id.*

[121] 2005 U.S. Dist. LEXIS 61647, at *12.

[122] *Id.*

[123] *Id.*

[124] *Id.*

N. fails to connect the challenged RFC terms with the record evidence in this case. For instance, Mr. N. does not contend the challenged RFC terms are inconsistent with (or fail to account for) any medical opinion or exam findings the ALJ found persuasive (unlike the claimants in *Jamie W.* and *Tennis*). Nor does Mr. N. argue the challenged RFC terms are inconsistent with other portions of the ALJ's decision finding particular limitations (unlike the claimant in *Thomas*). In *Thomas*, *Jamie W.*, and *Tennis*, each reviewing court concluded the ALJ's use of undefined terms prevented meaningful review of the claimant's underlying contentions of error. But Mr. N. fails to connect the terms he challenges with any underlying contention of error.

At bottom, Mr. N. suggests remand is required in any case where an RFC includes terms not found in agency regulations or the Dictionary of Occupational Titles (and not otherwise explained in the ALJ's decision). But Mr. N. cites no authority requiring remand solely on this basis. Where Mr. N. does not connect the challenged RFC terms to the evidence in this case or to his claims of error, he has not shown any error requiring remand.[125] For these reasons, Mr. N. fails to show the ALJ erred in his articulation of the RFC.

---

[125] Mr. N. also argues the ALJ's RFC assessment is improper because the ALJ has used the same RFC in other cases, including some cases where the claimant had no severe mental limitations. (Opening Br. 18–19, Doc. No. 8.) But he fails to cite any authority suggesting an ALJ's use of the same RFC in multiple cases is improper.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 21st day of March, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge